United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUMAH ALI-THOMAS MOORE<br><br>  Plaintiff,<br>v.<br><br>JEANNE WOODFORD, et al.,<br><br>  Defendants. | No. C 06-2357 SBA (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AS TO PLAINTIFF'S § 1983 CLAIMS; DENYING AS MOOT PLAINTIFF'S MOTIONS TO COMPEL DISCOVERY; AND REMANDING CASE TO STATE COURT**<br><br>(Docket Nos. 44, 55, 56) |

Plaintiff Jumah Ali-Thomas Moore, a state prisoner, filed this pro se civil action in Monterey County Superior Court alleging various claims arising from his incarceration at Salinas Valley State Prison (SVSP). Defendants removed the action to this Court, pursuant to 28 U.S.C. § 1441. Plaintiff alleges, inter alia, that: (1) Defendants purposely caused the drinking water at SVSP to be contaminated from June 10, 2004 until June 25, 2004, which caused him to become ill on June 10 and June 17; and (2) Defendants did not provide Plaintiff with adequate non-contaminated drinking water from June 25, 2004 to August 26, 2004.

Before the Court is Defendants' motion to dismiss Plaintiff's complaint for failure to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a). Plaintiff has filed an opposition, and Defendants have filed a reply. For the reasons discussed below, the Court GRANTS Defendants' motion to dismiss (Docket No. 44) and remands Plaintiff's remaining state law claims to state court. The Court will also address Plaintiff's pending motions to compel discovery (Docket Nos. 55, 56) below.

**BACKGROUND**

**I.   Factual Summary**

The following facts are taken from Plaintiff's verified complaint and the declarations of CDCR Chief of the Inmate Appeals Branch, N. Grannis, and Defendants' attorney, T. Maiorino, in support of Defendants' motion to dismiss.

On June 10, 2004, Plaintiff began suffering from stomach pains. (Compl. at 4.) On June 17,

2004, he suffered from nausea and "began vomiting for half an hour." (Id.) Plaintiff alleges that from June 10, 2004 to June 25, 2004, Defendants Barchacky, Lamarque, Caden and Zavala "allowed the drinking water to become contaminated, and also allowed Plaintiff to drink the high nitrate contaminated water . . . ." (Id.) Plaintiff also alleges that Defendants "purposely caused the prison drinking water to become contaminated, and purposely denied the plaintiff drinking water." (Id. at 7.)

On June 25, 2004, Defendant Caden issued a memorandum to all staff and inmates, which notified Plaintiff not to drink the tap water at SVSP. (Compl. at 4 (citing Ex. A).) On June 26, 2004, Defendants Zavala and Parin distributed a plan of operation to all inmates, which notified Plaintiff that the water usage would be curtailed by shutting off the tap water supply. (Compl. at 4 (citing Ex. B).)

On June 30, 2004, SVSP prison officials issued a warning notifying Plaintiff that there existed high levels of nitrate in the drinking water at SVSP. (Id. at 5 (citing Ex. C).)

On July 19, 2004, Dr. Grillo issued a physician's order for Plaintiff to receive a double ration of water due to a medical necessity. (Compl., Ex. D.) Even with the physician's order, Plaintiff was not provided with "double and triple portions of drinking water." (Compl. at 6.) In fact, Plaintiff claims that from June 25, 2004 to August 26, 2004, Defendants Caden, Lamarque, Zavala, Parin and Ortiz "failed to distribute enough drinking water to [Plaintiff], thereby causing [him] to suffer from the physical damages of pain and suffering by thirst, dehydration, low blood sugar, and mental damages . . . ." (Id.) Plaintiff also claims that the aforementioned Defendants failed to direct Defendant Sellers to distribute enough drinking water to Plaintiff. (Id.)

On July 26, 2004, Plaintiff filed a 602 inmate appeal form, received by SVSP staff on July 29, 2004. In this July 26, 2004 grievance, Plaintiff detailed his physical complaints related to complications from "drinking the well water" and his visit to Dr. Grillo. (Opp'n Ex. A at 1.) Plaintiff complained, "Lieutenants are allowing the officers to dehydrate me and make me sick with thirst and dehydration by failing to distribute drinking water to me." (Id. at 2.) He asked "to be issued one (1) cup of drinking water every hour, or 24 cups of drinking water each day by being

provided a larger receptacle to hold and store the drinking water . . . ." (Id. at 1.)

On August 5, 2004, Plaintiff filed another related 602 inmate appeal form, received by SVSP staff on August 10, 2004. In this August 5, 2004 grievance, Plaintiff complained that Defendant Sellers confiscated a plastic bottle on July 25, 2004, leaving him with only one eight-ounce cup from which to drink. (Opp'n Ex. C at 1.) Plaintiff again requested a larger water receptacle. (Id.)

On September 7, 2004, the August 5, 2004 grievance was answered and partially granted at the informal level by Defendant Sellers. (Id.) Defendant Sellers responded to Plaintiff's concern, stating that: "On July 25th [Defendant Sellers] was providing C8 with the first of 2 12 oz. waters per the meno [sic] given to all staff on C yard. The state cups provided to all [inmates] are 12 oz. not 8 oz. cups. The plastic containers [he] confiscated were contraband, and [he] stated that to the [inmate]. All [inmates] were given the opportunity for (2) 12 oz. of water per shift. All [inmates] now receive as much water as they need." (Id.) This response was delivered to Plaintiff on September 14, 2004.

Also on September 14, 2004, the informal level response to Plaintiff's July 26, 2004 grievance was delivered. (Opp'n Ex. A at 1.) Plaintiff's requests for more drinking water and a larger receptacle were denied because prison officials determined that he was being given an adequate supply of drinking water and that they could not provide Plaintiff with a larger receptacle while he was housed in administrative segregation. The response stated, "DENIED, you are now housed in Administrative Segregation and are only allowed a paper cup in your cell. Building staff provide adequate drinking water for the entire population of the unit." (Id.)

On September 26, 2004, Plaintiff attempted to elevate both grievances to the formal level. (Id.; Opp'n Ex. C at 1.) In the July 26, 2004 grievance, Plaintiff complained: "I continue to feel nauseated after I drink this faucet water at SVSP." (Opp'n Ex. A at 1.)

On September 28, 2004, Plaintiff received a memorandum from Defendant Variz. In the memorandum, Plaintiff was advised that he had violated Cal. Code Regs. tit. 15, § 3084.4 by filing multiple non-emergency appeals in a seven-calendar day period. (Opp'n Ex. A at 5.) Defendant

3

Variz also described other restrictions to Plaintiff's appeals, stating: "The appeals you have submitted are being returned to you. However, one appeal will be processed and the remaining appeals will be returned to you." Along with the memorandum, Plaintiff received an Inmate/Parolee Appeals Screening Form dated September 20, 2004. (Opp'n Ex. A at 4.)

On October 11, 2004, Plaintiff sent a letter along with an unspecified number of returned grievances -- including the grievances relevant to this action -- to Chief Grannis. (Opp'n Ex. A at 6.) In his letter, Plaintiff complained that he was not being allowed to file at the second level of review, and asked to bypass the second level and proceed directly to Director's level review. (Id.)

These documents were returned to Plaintiff on December 27, 2004, along with a letter in which Chief Grannis denied Plaintiff's request to bypass. (Opp'n Ex. A at 7.) The letter further advised Plaintiff that he must comply with instructions from the appeals coordinator to resolve the issues. (Id.)

Plaintiff attempted to resubmit both relevant grievances. On January 14, and again on January 24, 2005, Defendant Variz returned Plaintiff's grievances, citing violations of the regulation requiring appeals to be submitted within fifteen working days of the triggering event. (Opp'n Ex. A at 4.) At least one of Plaintiff's resubmissions included a letter, dated January 17, 2004, explaining the reason for the delay. (Opp'n Ex. A at 9.) In his rejections, Defendant Variz referenced the September 20, 2004 screening form, stating, "You were informed via this screen out, to resubmit within 7 days -- instead -- you refiled this appeal 4 months later." (Id.)

**II.    Procedural Summary**

On April 4, 2006, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(b) on the grounds that Plaintiff has asserted claims under 42 U.S.C. § 1983, in addition to claims under state law. As Defendants, he has named: Former Director of the California Department of Corrections and Rehabilitation (CDCR) Jeanne Woodford; SVSP Correctional Plant Manager Dean Barchacky; SVSP Appeals Coordinator T. Variz; SVSP Warden Anthony Lamarque; SVSP Acting Wardens G. Zavala and Edward J. Caden; SVSP Lieutenants R. Parin and M. Ortiz; as well

4

as SVSP Correctional Officer D. Sellers.

In its Order of Service dated September 30, 2008, the Court found cognizable claims against Defendants Barchacky, Caden, Lamarque, Zavala, Parin, Ortiz and Sellers for allegedly acting with deliberate indifference to Plaintiff's health and safety. The Court also found that Plaintiff stated cognizable supplemental state law claims that Defendants' actions constituted negligence, intentional tort, and intentional infliction of emotional distress. In the same Order, the Court dismissed with leave to amend Plaintiff's supervisory liability complaint against Defendant Woodford.[1] The Court dismissed with prejudice Plaintiff's claim against Defendant Variz related to his failure to respond to an administrative grievance. Finally, several Doe Defendants were terminated from this action without prejudice to Plaintiff filing an amendment to the complaint to add them as named defendants once he learns their identities.

In their motion to dismiss, Defendants argue that the Court may not proceed to decide the merits of Plaintiff's federal claims because he has not appropriately exhausted all available administrative remedies. In his opposition, Plaintiff concedes that he did not fully exhaust his administrative remedies. (Opp'n at 2.) Plaintiff argues, however, that he should be allowed to proceed in this Court because his attempts to exhaust were allegedly precluded by Defendants. (Id.) Specifically, Plaintiff contends that Defendants' failure to return the July 26, 2004 grievance to him in a timely manner resulted in his inability to properly exhaust. (Id. at 3.)

**DISCUSSION**

**I.     Legal Standard**

The Prison Litigation Reform Act of 1995 (PLRA) amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in

---

[1] Plaintiff amended his claim against Defendant Woodford, but failed to overcome the deficiency of his original claim. The Court dismissed the claim against Defendant Woodford with prejudice in its Order dated December 11, 2008.

5

prisoner cases covered by § 1997e(a) is mandatory.  Porter v. Nussle, 534 U.S. 516, 524 (2002). Even when a prisoner seeks relief not available in grievance proceedings, notably monetary damages, exhaustion is a prerequisite to suit.  Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). Similarly, exhaustion is a prerequisite for all prisoner suits regarding the conditions of their confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.[2]

The PLRA requires *proper* exhaustion of administrative remedies.  Woodford v. Ngo, 548 U.S. 81, 83 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 90-91.  Thus, compliance with prison grievance procedures is required by the PLRA to properly exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  Woodford, 548 U.S. at 84.

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Jones v. Bock, 549 U.S. 199, 218 (2007).  Where a prison's grievance procedures do not specify the requisite level of factual specificity required in the grievance, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'"  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)).  The grievance need not include legal terminology or legal theories unless they are needed to provide notice of the harm being grieved.  Id.  Nor must a grievance include every fact necessary to prove each element of an eventual legal claim.  Id.  The purpose of a

---

[2]These remedies need not meet federal standards, nor must they be "plain, speedy and effective."  Id. at 524 (citations omitted); Booth, 532 at 739-40 & n.5 (2001).  The obligation to exhaust persists as long as some remedy is available; when that is no longer the case, the prisoner need not further pursue the grievance.  Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005); Marella v. Terhune, 568 F.3d 1024, 1028 (9th Cir. 2009) (finding an inmate's claim fully exhausted when it was summarily denied for untimeliness and he was given no recourse for further appeal).

grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. Id.

The State of California provides its prisoners the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). It also provides them the right to file appeals alleging misconduct by correctional officers and officials. Id. § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the CDCR. Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a). Id. at 1237-38.

Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b). Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). However, a complaint may be dismissed by the court for failure to exhaust if a prisoner "conce[des] to nonexhaustion" and "no exception to exhaustion applies." Id. at 1120.

**II.   Analysis**

Defendants argue that Plaintiff did not properly exhaust his administrative remedies prior to the filing of his complaint as mandated by § 1997e(a). Specifically, they contend that Plaintiff's attempts to exhaust are deficient for two reasons. First, Defendants claims that the specific conduct alleged by Plaintiff differs from the conduct at issue in his administrative complaints. Second, Defendants argue that Plaintiff's administrative remedy is incomplete because the record includes no final decision at the Director's level. In response, Plaintiff contends that the wording of his administrative appeals make clear that he is addressing the same underlying conduct alleged in his

civil complaint. Furthermore, he argues that he was prevented from fully exhausting his claims through no fault of his own.

First, the Court finds no merit to Defendants' contention that Plaintiff failed to properly exhaust because of differences between his administrative appeals and the pleadings in this action. The standard for exhaustion set forth in Griffin does not require that the legal claim and the administrative grievance be identically worded. 557 F.3d at 1120. Rather, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" Id. (quoting Strong, 297 F.3d at 650). Plaintiff's grievances meet that standard, as both the July 26, 2004 and August 5, 2004 grievance alerted the prison to the nature of the wrong at issue in Plaintiff's deliberate indifference claim. The July 26, 2004 grievance clearly addresses his "medical complications that are associated with the drinking of contaminated drinking water" at SVSP. (Opp'n Ex. A at 1.)  In his attempt to appeal this grievance to the formal level of review, Plaintiff elaborated further and complained of being "denied adequate drinking water for 1 1/2 months and sickness due to contaminated water consumption." (Id.)

In their reply, Defendants only address Plaintiff's August 5, 2004 grievance concerning the confiscation of a water bottle by Defendant Sellers. While Plaintiff attached only the August 5, 2004 grievance to his initial complaint, Defendants are aware of Plaintiff's more detailed July 26, 2004 grievance which Defendants submitted to the Court as part of Exhibit A of their request for judicial notice filed on January 28, 2009. That request includes "copies of documents constituting the record of the claim of Thomas E. Moore, D-62389, Claim No. G 553466, for the June 10, 2004 incident submitted to the Victim Compensation and Government Claims Board of the State of California" (Docket No. 47). Defendants' failure to address the July 26, 2004 grievance apparently is based on the mistaken notion that the Court is limited to the allegations in the pleadings on a motion to dismiss. However, "[i]n deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Wyatt, 315 F.3d at 1119-20. Here, the record is sufficiently developed by both parties to show the existence and

relevance of both grievances. Therefore, the Court finds that these two administrative grievances address substantially the same harm alleged in Plaintiff's complaint.

Defendants next argue that Plaintiff has failed to satisfy the exhaustion requirement under § 1997e(a) because he did not receive a final decision from the Director's level of review in either of his relevant administrative grievances. In response, Plaintiff asserts that he was prevented from exhausting his appeals through the appropriate channels, and that his untimeliness was not his fault. (Opp'n at 3-4.) The records show that Plaintiff attempted to appeal both grievances to the Director's level, but he was denied review for failure to appeal to the second level. (Id. Ex. A at 7.) When Plaintiff attempted to comply promptly with the Director's instructions, albeit several months after the incident occurred, Defendant Variz rejected Plaintiff's grievances as untimely. (Id. at 1, 4.) Due to these administrative obstacles, Plaintiff contends that SVSP officials "prohibited the Plaintiff from exhausting the Plaintiff's administrative remedies . . . ." (Opp'n at 4.)

The Court finds the Ninth Circuit's decision in Marella instructive. In that case, plaintiff Marella's administrative grievance was denied at the initial stage as untimely because it was filed thirty-three days after the incident. 568 F.3d at 1026. The screening form Marella received after the denial included the following language: "[t]his screening action may not be appealed unless you allege the above reason is inaccurate." Id. at 1027. Marella acknowledged that the grievance was untimely; therefore, he lacked any grounds for appeal. Id. However, Marella argued that during the period in which his grievance would have been timely that he had been hospitalized and was segregated. Id. at 1026. As a result, Marella claimed that he lacked both access to the appropriate forms and knowledge of the procedural requirements. Id. The district court dismissed for failure to exhaust. However, the Ninth Circuit reversed and remanded the action. The court noted that "if the district court finds that [Marella] had the opportunity and ability to file his initial grievance timely, but failed to do so, his case should be dismissed." Id. at 1028. The Marella court cautioned against rigidly applying the requirements of proper exhaustion, or finding "no exceptions to the timely filing requirement exist." Id. at 1027.

The circumstances presented in this case are distinguishable from Marella. Unlike Marella, the record in this case demonstrates that Plaintiff had the opportunity and ability to properly exhaust, but failed to do so. Plaintiff was expressly warned about his abuse of the grievance process on September 28, 2004, in the form of a memorandum from Defendant Variz. (Opp'n Ex. A at 5.) That memorandum included instructions on how to properly pursue his grievances. Id. Rather than following those instructions, Plaintiff instead decided to bypass the second level of review by appealing directly to the Director's level. (Opp'n Ex. A. at 6.) When that attempt failed, Plaintiff attempted to restart the clock and resubmitted the grievances to the appeals coordinator, despite a delay of several months. (Opp'n Ex. A at 4, 8.) As a result, these grievances were repeatedly screened out as untimely. (Id.) As in Marella, Plaintiff received a screening form containing language that "[t]his screening action may not be appealed unless you allege the above reason is inaccurate[.]" However, unlike the plaintiff in Marella, Plaintiff never conceded that the reason for the screening -- untimeliness of his grievances -- was accurate. Plaintiff resubmitted the grievances to the appeals coordinator, Defendant Variz, several times. (Opp'n Ex. A at 1.) In at least one of these instances, Plaintiff followed appropriate procedure and attempted to appeal the screenings as inaccurate, as shown in his January 17, 2005 letter to Defendant Variz. (Opp'n Ex. A at 9.) That fact further distinguished the instant action from Marella in that Plaintiff demonstrated his knowledge of and access to the proper administrative appeal forms and procedures. (Opp'n Ex. A at 4, 8.) Therefore, the Court finds unavailing Plaintiff's argument that he was not allowed to exhaust his appeal through the Director's level of review through no fault of his own. It is clear that Plaintiff had the opportunity and ability to timely and properly exhaust, but failed to do so. Marella, 568 F.3d at 1028.

In sum, Woodford makes clear that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. 548 U.S. at 83-83. Plaintiff deliberately abandoned the proper course of appeal in violation of the prison's procedural rules for filing grievances by attempting to bypass the second level of review. Plaintiff has failed to exhaust his administrative remedies; thus, his deliberate

10

indifference claim is DISMISSED as unexhausted. Accordingly, the Court GRANTS Defendants' motion to dismiss as to this claim.

Plaintiff's remaining claims are based on state law. In its discretion, the Court declines to exercise supplemental jurisdiction over those remaining claims. See 28 U.S.C. § 1367(c)(3). This case therefore will be remanded to state court. See Swett v. Schenk, 792 F.2d 1447, 1450 (9th Cir. 1986) ("it is within the district court's discretion, once the basis for removal jurisdiction is dropped, whether to hear the rest of the action or remand it to the state court from which it was removed"); Plute v. Roadway Package System, Inc., 141 F. Supp. 2d 1005, 1007 (N.D. Cal. 2001) (court may remand sua sponte or on motion of a party).[3]

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.  Defendants' motion to dismiss (Docket No. 44) is GRANTED as to Plaintiff's section 1983 claims, which are DISMISSED without prejudice to refiling after exhausting California's prison administrative process. See McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

2.  The Court declines to exercise supplemental jurisdiction over any remaining state law claims now that the federal question claim has been dismissed. See 28 U.S.C.§ 1367(c)(3). Therefore, this action is remanded to the Monterey County Superior Court for such other and further proceedings as that court deems proper.

---

[3] The Court's decision to dismiss this action and remand the case to state court also renders moot Plaintiff's pending motions to compel discovery. Plaintiff filed two motions to compel: the first on April 23, 2009; and the second on June 16, 2009. In the April 23, 2009 motion, Plaintiff seeks to compel Defendant Zavala to answer more fully interrogatories regarding CDCR administrative personnel. The June 16, 2009 motion concerns interrogatories, addressed to Defendant Barchacky, regarding the CDCR prison staff being responsible for maintaining the SVSP water system. The Court further notes that neither of these interrogatories address the issue of exhaustion; therefore, they are irrelevant to the dismissal of this case. Accordingly, Plaintiff's motions to compel are DENIED as moot.

3.   Plaintiff's motions to compel discovery (Docket Nos. 55, 56) are DENIED as moot.

4.   The Clerk of the Court shall close the file, terminate all pending motions, and send the necessary materials to the Monterey County Superior Court for the remand.

5.   This Order terminates Docket Nos. 44, 55 and 56.

IT IS SO ORDERED.

DATED:  8/27/09

                          SAUNDRA BROWN ARMSTRONG
                          United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

MOORE et al,

     Plaintiff,

  v.

WOODFORD et al,

     Defendant.
                          /

Case Number: CV06-02357 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 27, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Thomas Moore D-62389
California Medical Facility-Vacaville
P.O. Box 2000
Vacaville, CA 95676

Dated: August 27, 2009

                                        Richard W. Wieking, Clerk
                                        By: LISA R CLARK, Deputy Clerk

**United States District Court**
For the Northern District of California